STACY, C. J., took no part in the consideration or decision of this case.
The record discloses, in part, the following:
"Opinion of Full Commission (16 June, 1933):
"This case came on for review before the Full Commission at Raleigh, North Carolina, 29 May, 1933, upon an appeal by the defendant in apt time from the decision of Commissioner Dorsett in which compensation was allowed for specific loss of hearing subsequent to the plaintiff having *Page 601 
been paid compensation for temporary total disability and for a general partial disability under section 30.
"It appears from the record that the plaintiff was paid in a lump sum for his general partial disability, which came within the purview of section 30. The award of 4 March, 1932, by Commissioner Dorsett, provided compensation for total disability for 121 and 3/7 weeks at $18.00 per week and 176 and 4/7 weeks at $6.93 per week for 33 1/3 per cent permanent partial disability under section 30. On 2 December, 1932, Commissioner Dorsett conducted another hearing to determine whether the plaintiff had had a change of condition, and, if so, the extent of the change. Commissioner Dorsett held that the plaintiff did not have a greater general partial disability than 33 1/3 per cent, but did find that the plaintiff had a 51 per cent loss of hearing in the left ear and 56 per cent loss of hearing in the right ear, for which he had not been paid. Commissioner Dorsett further held that the plaintiff was entitled to additional compensation for specific loss of hearing, and it was upon this point that the defendant appealed, contending that the claimant had been paid in full. Section 30 (underscoring by Commission) reads as follows:
"`Except as otherwise provided in the next section hereafter, where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly compensation equal to 60 per centum of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than eighteen dollars a week, and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of injury. In case the partial disability begins after a period of total disability, the latter period shall be deducted from the maximum period herein allowed for partial disability.'
"Section 31 provides for a specific schedule of compensation to be paid in certain permanent injuries, particularly section 31-s, reads as follows: `For the complete loss of hearing in one ear, sixty per centum of the average weekly wages during seventy weeks; for the complete loss of hearing in both ears, sixty per centum of average weekly wages during one hundred and fifty weeks.'
"The Full Commission is in accord with Commissioner Dorsett that the plaintiff is entitled to the additional compensation under section 31-s. While the Commission has been unable to find a court case, the Virginia Industrial Commission, which has similar sections, has the following to say on the same subject: (Section 31 corresponds to our section 30, and section 32 of the Virginia law corresponds to the North Carolina section 31.) `The employee sustained injuries resulting in *Page 602 
disability of a general nature such as would entitle him to compensation under section 31. In addition to such injuries, he had also sustained injuries of a specific nature such as to entitle him to compensation under section 32. He is entitled to compensation for the specific injuries under section 32, and then, if still disabled as a result of the other injuries, compensation will be paid under section 31.' E. L. Baughn v. RichmondForging Co., Claim No. 70-597.
"However, in the case before the North Carolina Industrial Commission the plaintiff had already been paid for his general disability and the evidence does not disclose that the specific disability was shown at any previous hearing. Therefore, the Full Commission affirms the decision of Commissioner Dorsett as shown in the opinion filed 2 March, 1933, and the corrected award of 10 March, 1933. The defendants will pay the costs of this hearing."
As ordered in said opinion, an award was issued on the same date, as follows:
"Award (16 June, 1933).
"You, and each of you, are hereby notified that a hearing was had before the Full Commission on 29 May, 1933, in the above entitled case, Raleigh, N.C. and the decision thereupon was rendered by Commissioner T. A. Wilson for the Full Commission, on 16 June, 1933, in which an award was ordered and adjudged, as follows:
"`That the findings of fact and conclusions of law set out in the opinion of Commissioner J. Dewey Dorsett are proper and justified from all of the evidence, and they are hereby adopted as findings of fact and conclusions of law of the Full Commission, and that the award heretofore issued under date of 10 March, 1933, reading as follows: "Upon the finding that the plaintiff has not had a change of condition as to disability of a general nature, and that he now has only 33 1/3 per cent disability of a general nature, the claim for additional compensation for such disability is denied. Upon the finding that plaintiff has 51 per cent loss of hearing in left ear and 56 per cent loss of hearing in right ear, the defendant will pay plaintiff compensation at the rate of $18.00 per week for a period of 74 9/10 weeks, covering 51 per cent loss of hearing of the left ear and 56 per cent loss of hearing of the right ear. The plaintiff has expended $219.25 for medical and hospital treatment. The plaintiff will submit itemized bill to the Commission for approval, such itemized bills to show authorization for drugs and also for glasses, and when approved the defendants will pay plaintiff this amount as approved. Defendants to pay cost of hearing. A fee of $100.00 is approved for attorney representing the plaintiff." The foregoing corrects the award dated 2 March, 1933, which contained an error in that compensation was awarded for total loss of hearing in both ears, whereas, *Page 603 
according to Commissioner Dorsett's findings of fact and according to the award itself the plaintiff has suffered 51 per cent loss of hearing of the left ear and 56 per cent loss of hearing of the right ear, be in all respects affirmed.'"
To this opinion and award of the Full Commission the defendants excepted and appealed to the Superior Court. The case came on for hearing in the Superior Court before Stack, J., at Chambers, on Friday, 24 November, 1933, when and where his Honor, Judge Stack, rendered judgment as follows:
"This cause coming on to be heard and being heard before his Honor, A. M. Stack, at Chambers in the town of Monroe, by consent of parties, on Friday, 24 November, 1933; after hearing the argument of counsel and a careful review of the record on appeal from the North Carolina Industrial Commission, it appearing to the court that the judgment appealed from was based on findings of Dr. Hart with reference to defective hearing of the plaintiff, and the defendants had not had an opportunity to cross-examine Dr. Hart in this connection; and the court being of the opinion that the case should be remanded with a view of allowing the defendants the opportunity of cross-examining Dr. Hart with reference to the defective hearing complained of by the plaintiff. It is therefore ordered and adjudged by the court that this case be and the same is hereby remanded to the North Carolina Industrial Commission; that the defendants be allowed the opportunity to examine Dr. Hart with reference to plaintiff's defective hearing. The other exceptions and objections raised by the defendants in this appeal are not passed upon and the same are in all respects preserved. A. M. Stack, Judge of the 13th Judicial District."
To the foregoing order the plaintiff objects and excepts.
In accordance with the judgment of Judge Stack, on 15 December, 1933, there was sent out to all parties notices of hearing to be conducted in Charlotte on 12 January, 1934, copy of said notice being as follows:
"Notice of Hearing. A hearing will be held in the above case at office clerk Superior Court, Charlotte, N.C. at 2 o'clock p.m., on 12 January, 1934. This hearing is part of a schedule. It cannot be postponed without considerable inconvenience and extra expense. The Commission will not consent to postponement except upon strictly legal grounds. Subject of hearing (here state question in dispute): This cause remanded to the N.C. Industrial Commission so that the defendants be allowed the opportunity to examine Dr. Hart with reference to plaintiff's defective hearing. The parties to this hearing should arrange to have all witnesses present to testify promptly at the time and place above given. The right is reserved to take such action as the law permits if either party fail to appear at the time and place set for this hearing." *Page 604 
Prior to the hearing in Charlotte, defendants' counsel received a proposition of settlement from plaintiff's counsel, which is embodied in letter of A. C. Huneycutt, attorney, directed to W. E. Smith, attorney, dated 12 January, 1934. This offer of settlement was accepted by the defendants and confirmed by judgment filed 15 January, 1934, by Commissioner Wilson, the offer of settlement being set out in the judgment, which is as follows:
"Order of Commissioner Wilson (15 January, 1934).
"This case was set for Charlotte, N.C. 12 January, 1934, to take the evidence of Dr. Hart pursuant to the order of the judge of the Superior Court of the 13th Judicial District. However, the day before, at Albemarle, the attorneys on both sides had a conference with the hearing Commissioner in which the question was raised as to whether, even if the claimant should win the court decision, that as a matter of law shouldn't the defendant carrier be given credit against the weekly payments for compensation paid for partial disability under section 30 to a previous award of Commissioner Dorsett, which was paid in a lump sum. The hearing Commissioner ruled that the defendants were entitled to this credit, and the defendants agreed to pay, which the claimant accepted. The agreement for settlement of the case is embodied in the letter of the plaintiff's attorney, A. C. Huneycutt, to the defendant carrier, dated 12 January, 1934, which reads as follows:
"`Further, with regard to the compromise settlement of the C. M. Morgan matter now pending before the North Carolina Industrial Commission, Mr. Morgan has taken the matter under consideration, and has decided that if your clients, town of Norwood and U.S. F. G. Co., will pay him in a lump sum, at once, he will accept $829.14, net to him, as full and complete settlement against the town of Norwood arising through, from, and on account of the accident in question, your client, of course, to pay the attorney's fees set out in the award of 10 March, 1933, cost of the appeal, and other items named in the said award, or arrange same so as to protect him from being responsible for same. In other words, he will accept $829.14 in a lump sum net to him.'
"The appeal of the defendants is withdrawn, the testimony of Dr. Hart was not taken. An award shall issue approving the agreement above set forth in final settlement and determination of this case."
On 17 January, 1934, the Commission rendered judgment approving the lump sum settlement, as follows:
"Judgment of Commission (17 January, 1934):
"The Commission approves the lump sum settlement of $829.14 net to the plaintiff as set out in the letter of Attorney A. C. Huneycutt, 12 January, 1934."
Payment of the amount of this agreed settlement was made on 24 January, 1934. Thereafter the Commission received from the plaintiff *Page 605 
an affidavit, dated 5 January, 1935, requesting that the case be reopened, said affidavit being as follows:
"This matter, affiant C. M. Morgan makes oath that he was injured while in the employ of the town of Norwood, on or about 13 October, 1929; after that certain negotiations were had with the insurance carrier, and affiant was paid the sum of $18.00 a week for 12 weeks, when payment ceased. Thereafter a hearing was had before the Industrial Commission and affiant was awarded the sum of $6.93 per week for a period of 178 weeks. This was treated as a lump sum settlement as of the date thereof. Thereafter there was a subsequent hearing and award in which affiant was awarded approximately $829.10, due to defective hearing. Affiant's hearing has steadily grown worse, his physical condition has gradually deteriorated, and he is now absolutely unable to pursue any gainful occupation. Affiant would not have agreed to the settlement aforesaid had not the existence of his illness been so rapid as to make it necessary as compensation for the injuries received by him and which are fully set forth in the record. Wherefore, affiant prays that the case as to him be reopened; that the insurance carrier be notified; that a hearing be had; and that such proceedings taken and such orders made at such hearing as may be consistent with right and justice. (Signed) C. M. Morgan."
On 2 August, 1935, the hearing Commissioner Dorsett found certain facts and denied plaintiff further compensation. On appeal by plaintiff to the Full Commission, on 7 July, 1936, they found certain facts and made an award as follows: "Upon the findings that plaintiff has had a change of condition since the last payment of compensation, and that plaintiff has been temporarily totally disabled since 21 June, 1935, the defendants will pay plaintiff compensation at the rate of $18.00 per week from 21 June, 1935, during the continuance of temporary total disability, total payments not to exceed $6,000, with proper deduction for any and all payments of compensation heretofore made," etc.
The defendants appealed to the Superior Court, and the court below rendered judgment, as follows: "It is therefore ordered, adjudged, and decreed that the judgment of the Full Commission, handed down on 7 July, 1936, be and is hereby the judgment of this court. J. A. Rousseau, Judge presiding."
The defendants excepted and assigned error to the judgment, and appealed to the Supreme Court.
The material question involved: "Is the compromise settlement of 12 January, 1934, approved by the Industrial *Page 606 
Commission, on 17 January, 1934, binding and final between the parties?" We think so.
It is in the record that the various disability compensations heretofore awarded plaintiff were some $4,000 other than the present award. In the record is also the following: "The agreement for settlement of the case is embodied in the letter of the plaintiff's attorney, A. C. Huneycutt, to the defendant carrier, dated 12 January, 1934, which reads as follows:
"`Further, with regard to the compromise settlement of the C. M. Morgan matter now pending before the North Carolina Industrial Commission, Mr. Morgan has taken the matter under consideration, and has decided that if your clients, town of Norwood and U.S. F. G. Co., will pay him in a lump sum, at once, he will accept $829.14, net to him, as full and complete settlement against the town of Norwood arising through, from, and on account of the accident in question, your client, of course, to pay the attorney's fees set out in the award of 10 March, 1933, cost of the appeal, and other items named in the said award, or arrange same so as to protect him from being responsible for same. In other words, he will accept $829.14 in a lump sum net to him.'
"`The appeal of the defendants is withdrawn, the testimony of Dr. Hart was not taken. An award shall issue approving the agreement above set forth in final settlement and determination of this case.'
"On 17 January, 1934, the Commission rendered judgment approving the lump sum settlement as follows: Judgment of Commission (17 January, 1934). `The Commission approves the lump sum settlement of $829.14 net to the plaintiff as set out in the letter of Attorney A. C. Huneycutt, 12 January, 1934.' Payment of the amount of this agreed settlement was made on 24 January, 1934."
There was a controversy between the plaintiff and defendants as to additional disability compensation more than had been heretofore paid plaintiff. The parties compromised and settled this additional claim of plaintiff. The language of this agreement is clear and not ambiguous: "Netto him, as full and complete settlement against the town of Norwood arisingthrough, from, and on account of the accident in question." This was approved by the Industrial Commission and the money paid on the faith of this agreement. The plaintiff in his affidavit to reopen the case says: "Affiant would not have agreed to the settlement aforesaid had not the existence of his illness been so rapid as to make it necessary as compensation for the injuries received by him and which are fully set forth in the record."
To set aside the agreement, it does not appear upon proper allegation and proof that the "full and complete settlement" was obtained by fraud or mutual mistake, or that consent was not given. The plaintiff was *Page 607 sui juris and is now estopped to deny his solemn agreement. Boucher v.Trust Co., ante, 377.
In Mfg. Co. v. Lumber Co., 178 N.C. 571 (574), we find: "If treated as an exception to the judgment, it presents the single question whether the facts found or admitted are sufficient to support the judgment. (Ullery v.Guthrie, 148 N.C. 419)." Wilson v. Charlotte, 206 N.C. 856; Orange Co.v. Atkinson, 207 N.C. 593 (596); Shuford v. Building and Loan Assn.,210 N.C. 237 (238); Best v. Garris, ante, 305 (307-8). We do not think the facts admitted support the judgment.
We have consistently held, as stated in Johnson v. Asheville HosieryCo., 199 N.C. 38 (40): "It is generally held by the courts that the various compensation acts of the Union should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow, and strict interpretation."
We think the facts in the present case and statutes on the subject differ from those in the authorities cited by plaintiff. Be that as it may, we are not inclined to set aside a solemn agreement in full settlement, approved by the Industrial Commission and the money paid and accepted by plaintiff on the faith of his agreement. The agreement is not a "scrap of paper."
For the reasons given, the judgment in the court below is
Reversed.
STACY, C. J., took no part in the consideration or decision of this case.