FRED FLEMING, EMPLOYEE, PLAINTIFF v. K-MART CORPORATION, EMPLOYER, DEFENDANT, SELF-INSURED

No. 241PA84

(Filed 8 January 1985)

1. **Master and Servant § 65.2— workers' compensation—back injury—referred pain—amount of compensation**

   When an injury to the back causes referred pain to the extremities of the body and this pain impairs the use of the extremities, an award of workers' compensation must take into account such impairment.

2. **Master and Servant § 65.2— workers' compensation—back injury and pain in legs—permanent total disability**

   The Industrial Commission's conclusion that plaintiff is entitled to an award of compensation for permanent total disability under G.S. 97-29, not just for loss of use of the back under G.S. 97-31(23), is supported by the Commission's findings that, in addition to his initial back injury, plaintiff also suffers from arachnoiditis, resulting in extreme pain in plaintiff's legs which makes walking and other movement practically, if not functionally, impossible, and that plaintiff is incapable of earning any wages because of his back injury and arachnoiditis. G.S. 97-2(9).

3. **Master and Servant § 69— workers' compensation—total disability—combined effect of all injuries**

   Even though no single injury of a claimant resulted in total and permanent disability, the claimant is entitled to receive compensation under G.S. 97-29 so long as the combined effect of all the injuries caused permanent and total disability as that term is defined in G.S. 97-2(9).

**4. Master and Servant § 69— workers' compensation—loss of use of legs—total and permanent disability**

Where the Industrial Commission's findings support a conclusion that plaintiff suffered total loss of use of both legs due to arachnoiditis, he is entitled under G.S. 97-31(17) to compensation for total and permanent disability in accordance with the provisions of G.S. 97-29.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

ON discretionary review of the decision of the Court of Appeals, 67 N.C. App. 669, 313 S.E. 2d 890 (1984), affirming the opinion and award of the Industrial Commission filed 7 September 1982, as amended 11 October 1982. Heard in the Supreme Court 10 October 1984.

On 27 December 1978 plaintiff was injured while lifting boxes of paint in the course of his employment with defendant. After being treated initially by a family physician for back pain resulting from the accident, plaintiff was examined on 20 February 1979 by Grady E. Price, an orthopedic surgeon. A myelogram was performed on Mr. Fleming which revealed a large ruptured disk between his fourth and fifth lumbar vertebrae. On 26 February 1979 Dr. Price performed a laminectomy, removing the disk material which was causing plaintiff pain. Plaintiff was readmitted to the hospital in November 1979 for further back surgery; at this point an arthritic spur in the third space on his left side was removed. Dr. Price also removed some scar tissue wrapped around a nerve root in hopes of alleviating some of plaintiff's pain. These two operations did not relieve chronic pain plaintiff felt in his back and legs. However, because this pain apparently arose from the scar tissue formed from the operations and because additional surgery would create more scar tissue, Dr. Price advised Mr. Fleming that further operations would not be helpful. Since his second operation, Mr. Fleming has suffered chronic back and leg pain which prevents him from remaining in any one physical position for an extended period of time.

Plaintiff applied for workers' compensation benefits, and after a hearing a deputy commissioner of the Industrial Commission filed an opinion and award on 23 December 1981. This opinion and award found as facts that plaintiff had suffered an injury by accident arising out of and in the course of his employment by

defendant and that he sustained a fifty percent permanent partial disability to his back as a result of the accident. The commissioner determined that because plaintiff's only injury was to his back, he was entitled to receive compensation only under N.C.G.S. 97-31(23). Therefore the commissioner awarded plaintiff compensation of $132 per week for 150 weeks.

Plaintiff appealed this ruling to the Full Commission, which vacated and set aside the deputy commissioner's opinion and award on 7 September 1982. The Full Commission found as facts, inter alia, that as a result of the medical treatments he received for his back injury, plaintiff developed arachnoiditis, "the binding down of the spinal nerve roots"; that arachnoiditis is responsible for plaintiff's current disabling pain in his back and legs; that plaintiff is totally unable to pursue work of any kind and therefore is incapable of earning any wages; and that plaintiff is permanently and totally disabled as a result of the accident and the development of arachnoiditis. The Commission concluded as a matter of law that because of his injury and arachnoiditis plaintiff is incapable of earning the wages which he was receiving at the time of his injury, and therefore plaintiff is totally disabled within the meaning of N.C.G.S. 97-2(9); that plaintiff is entitled to an award of compensation for permanent total disability under N.C.G.S. 97-29; and that plaintiff is entitled to all medical expenses incurred as a result of his injury and arachnoiditis. The Commission awarded plaintiff $88 per week (which was later amended to $132 per week) during the period of total permanent disability. The Commission also ordered defendant to pay medical expenses which the plaintiff incurred because of the injury and arachnoiditis.

Defendant appealed this order to the Court of Appeals, which affirmed. Defendant's petition to this Court for discretionary review was allowed 6 July 1984.

*Walker, Palmer & Miller, by George J. Miller, for plaintiff.*

*Hedrick, Eatman, Gardner, Feerick & Kincheloe, by John F. Morris and Edward L. Eatman, Jr., for defendant.*

MARTIN, Justice.

The sole issue before us is whether the Court of Appeals erred by affirming the Industrial Commission's opinion and award

which found that plaintiff is permanently and totally disabled and therefore entitled to compensation under N.C.G.S. 97-29. In relevant part, N.C.G.S. 97-29 provides:

Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week.

In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care of rehabilitative services shall be paid for by the employer during the lifetime of the injured employee.

The term "disability" as used in the Workers' Compensation Act is defined by N.C.G.S. 97-2(9). This statute provides that the term means "incapacity because of the injury to earn wages which the employee was receiving at the time of injury in the same or any other employment." In *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683 (1982), we held that:

[I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*See also, e.g., Lucas v. Burlington Industries*, 57 N.C. App. 366, 291 S.E. 2d 360, *cert. granted*, 306 N.C. 385 (1982), *remanded by order* (9 November 1982).

In the present case the Industrial Commission made the following findings of fact:

1. On December 27, 1978, plaintiff sustained an injury by accident arising out of and in the course of his employment

as Manager of the Paint Department with defendant employer. At that time, he experienced some back and bilateral leg pain while lifting heavy boxes of paint. He was initially treated by a family practitioner in Huntersville, North Carolina, but as his symptoms of back and leg pain worsened, he sought medical assistance from a specialist.

2. Grady E. Price, an orthopedic surgeon, examined plaintiff on February 20, 1979. Dr. Price diagnosed a ruptured disc. Corrective surgery was recommended and performed at the Orthopedic hospital of Charlotte by Dr. Price on February 26, 1979.

3. A laminectomy was performed, and that portion of the disc believed to be putting pressure on the nerve was removed. Preoperative leg pain subsided only temporarily, so Dr. Price prescribed oral cortisone.

4. Plaintiff's condition did not adequately respond to nonsurgical treatment, and he was again readmitted to the hospital for surgery by Dr. Price on November 19, 1979.

5. During this surgery, the third space was operated on and an arthritic spur, which may or may not have been causing pressure on the nerve, was spotted. The scar tissue wrapped around the nerve root was removed.

6. Plaintiff was discharged from the hospital on November 27, 1979, and was examined by Dr. Price on a December 28, 1979 follow-up visit. Plaintiff was complaining of stiffness and aching in his back, and with leg pain.

7. Dr. Price communicated with plaintiff regularly in January, February, and March of 1980, during which time, plaintiff continued to experience pain in his back and leg.

8. A myelogram was performed in August 1980 revealing another defect at the third and fourth spaces. Dr. Price felt that additional surgical treatment would not be helpful.

9. Plaintiff continued to suffer from back and leg pain, and saw Dr. Price through February 1981. The pains were so severe, plaintiff could not be up for more than 30 minutes at a time. He had to lie down and rest frequently during the

day. If he sat for long periods, his back hurt and he would have to get up to relieve the pain. When he did, his legs hurt and he had to sit back down. Thus, although on medication, plaintiff could not get comfortable at any one time during the day in both the back and legs.

10. Dr. Archie T. Coffee, Jr., a neurologist, first examined plaintiff on April 7, 1981. Plaintiff related symptoms of pain in his lumbar spine, low back area, and his left leg.

11. Dr. Coffee, like Dr. Price, concluded that as a result of the treatment for the occupational injury to his back, plaintiff developed arachnoiditis. The end result of arachnoiditis is the binding down of the spinal nerve roots causing impairment and dysfunction.

12. Archnoiditis [*sic*] is responsible for plaintiff's current disabling pain in his back and leg.

13. Plaintiff is totally unable to pursue work of any kind, therefore, is incapable of earning any wages.

14. Plaintiff has sustained a permanent total disability as a result of the aforesaid injury by accident and the subsequent development of arachnoiditis.

The Commission concluded as matters of law, among other things, that:

1. Plaintiff is incapable to earn the wages which he was receiving at the time of his injury in the same or any other employment because of the injury and subsequent arachnoiditis, and is, therefore, totally disabled. G.S. 97-2(9).

2. Plaintiff is entitled to an award of compensation for permanent total disability under G.S. 97-29.

Review of an award by the Industrial Commission is limited to the questions (1) whether there was competent evidence before the Commission to support its findings, and (2) whether such findings support its legal conclusions. *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978). Upon reviewing the record we have concluded that all of the Commission's findings of fact are supported by evidence brought before it.

Both Dr. Price, an orthopedic surgeon, and Dr. Archie Coffee, Jr., a neurosurgeon, doctors who had treated or examined plaintiff, testified that they were of the opinion that plaintiff is incapable of earning any wages because of his accidental injury and arachnoiditis. As the Court of Appeals correctly notes, the testimony of these two experts concerning plaintiff's arachnoiditis and pain amply supports the Industrial Commission's findings with respect to plaintiff's actual medical condition. Indeed defendant does not argue that plaintiff is not, in fact, incapable of earning any wages because of his accidental injury and the ensuing arachnoiditis.

Instead, defendant takes issue with the Commission's determination that plaintiff suffered permanent total disability within the meaning of the Workers' Compensation Act. Both Dr. Price and Dr. Coffee rated plaintiff as having a permanent partial disability of fifty percent of the spine, even when plaintiff's leg pains were taken into account. Defendant argues that it is thus evident that plaintiff suffered only a partial loss of use of the back, and thus under our decisions in *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978), and *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978), plaintiff is entitled to receive compensation only under the schedule set forth in N.C.G.S. 97-31(23). We disagree.

In *Little*, plaintiff hurt her back in a work-related accident. The Commission only awarded her compensation for permanent partial disability under N.C.G.S. 97-31(23) even though the injury to plaintiff's spinal cord also resulted in

> weakness *in all of her extremities*, and numbness or loss of sensation *throughout her body*. The doctors further testify that she has suffered diminished mobility and has "difficulty with position sense and with recognition of things in her hands when objects are placed in her hands." All of this testimony is uncontradicted.

295 N.C. at 531, 246 S.E. 2d at 745. Because the Industrial Commission limited plaintiff's recovery to an award under N.C.G.S. 97-31(23), this Court remanded the case, noting:

> The impairments described above are compensable under other sections or subsections of the Workmen's Compensa-

tion Act and are not subsumed under the provisions of subsection (23) which provides compensation only "for loss of use of the back." If the Commission determines plaintiff has suffered these impairments, as the uncontradicted evidence tends to show, the award must take into account these and all other compensable injuries resulting from the accident. "[T]he injured employee is entitled to an award which encompasses all injuries received in the accident." *Giles v. Tri-State Erectors*, 287 N.C. 219, 214 S.E. 2d 107 (1975).

*Id.*, 246 S.E. 2d at 746. We also observed:

If [plaintiff] is unable to work and earn *any* wages, she is totally disabled. G.S. 97-2(9). In that event, unless all her injuries are included in the schedule set out in G.S. 97-31, she is entitled to an award for permanent total disability under G.S. 97-29. If all her injuries are included in the schedule set out in G.S. 97-31, she is entitled to compensation exclusively under G.S. 97-31. This is true from the language of the statute itself. *See Watts v. Brewer*, 243 N.C. 422, 90 S.E. 2d 764 (1956); *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 22 S.E. 2d 570 (1942). *Compare Larson, supra,* § 58.20, n. 34 *et seq.*

If she is able to work and earn *some* wages, but less than she was receiving at the time of her injury, she is partially disabled. G.S. 97-2(9). In that event she is entitled to an award under G.S. 97-31 for such of her injuries as are listed in that section, and to an additional award under G.S. 97-30 for the impairment of wage earning capacity which is caused by any injuries *not listed* in the schedule in G.S. 97-31. *See Morgan v. Norwood,* 211 N.C. 600, 601-02, 191 S.E. 345, 346 (1937). *See generally* W. Schneider, Workmen's Compensation Text § 2318 (1957).

*Id.* at 533, 246 S.E. 2d at 747.

In *Little* there was no evidence that plaintiff was totally disabled because of her injuries. The cause was remanded to determine her capacity to work and earn wages. The evidence before the Commission was not sufficient to support a finding that the referred injuries caused by Little's back condition resulted in loss of use of additional parts of her body that would

cause total physical disability. Her additional impairment was limited to weakness in her extremities and loss of sensation throughout her body. The evidence before the Commission was not sufficient to support a finding of total disability, and the Court remanded the case for the additional purpose of making findings under N.C.G.S. 97-30 to determine whether plaintiff was entitled to an additional award under that section.

Here, plaintiff is incapable of earning any wages and is therefore totally disabled as the result of his back injury and the resulting arachnoiditis.

In *Perry*, the plaintiff injured his back in a work-related accident and was awarded workers' compensation under N.C.G.S. 97-31(23). However, similarly to the *Little* case, the Commission failed to make findings as to whether plaintiff suffered any permanent loss of use of either or both legs when there was competent evidence before the Commission that would have supported such findings. Because "the injured employee is entitled to an award which encompasses all injuries received in the accident," *Giles v. Tri-State Erectors*, 287 N.C. 219, 225, 214 S.E. 2d 107, 111 (1975), this Court remanded the *Perry* case for findings with respect to any loss of use of plaintiff's legs.

[1, 2] The present appeal is thus factually different from both *Little* and *Perry* and these cases do not compel a reversal of the decision of the Court of Appeals. In addition to his initial back injury, plaintiff also suffered from arachnoiditis, resulting in extreme disabling pain in plaintiff's legs. This pain, although emanating from plaintiff's spinal cord, is not experienced in the back but rather in the legs, making walking and other movement practically, if not functionally, impossible. We hold that when, as here, an injury to the back causes referred pain to the extremities of the body and this pain impairs the use of the extremities, then the award of workers' compensation must take into account such impairment. *See Giles v. Tri-State Erectors*, 287 N.C. 219, 214 S.E. 2d 107. In the present case, unlike the *Perry* and *Little* cases, the Industrial Commission issued an opinion and award appropriately taking into account injuries both to plaintiff's back and to his legs. The Commission's finding that plaintiff was totally and permanently disabled within the meaning

of N.C.G.S. 97-2(9) is clearly supported by its findings of fact and is thus binding upon this Court.

[3] If an injured employee is permanently and totally disabled as the term is defined by N.C.G.S. 97-2(9), then he or she is entitled to receive compensation under N.C.G.S. 97-29. *See West v. Bladenboro Cotton Mills*, 62 N.C. App. 267, 302 S.E. 2d 645 (1983); *Cook v. Bladenboro Cotton Mills*, 61 N.C. App. 562, 300 S.E. 2d 852 (1983). *See generally* Note, *North Carolina General Statutes Section 97-31: Must it Provide Exclusive Compensation for Workers who Suffer Scheduled Injuries?*, 62 N.C.L. Rev. 1462 (1984). This is true even though no single injury of claimant resulted in total and permanent disability, so long as the combined effect of all of the injuries caused permanent and total disability.

[4] Although it is clear that because plaintiff is totally unable to earn any wages, he is disabled within the meaning of N.C.G.S. 97-2(9) and thus entitled to benefits under N.C.G.S. 97-29 directly, we note that if the Commission had analyzed plaintiff's case by turning first to the schedule of injuries in N.C.G.S. 97-31, it should have come to the same conclusion. N.C.G.S. 97-31(19) states that "[t]otal loss of use of a member . . . shall be considered as equivalent to the loss of such member . . . ." N.C.G.S. 97-31(17) provides that "[t]he loss of . . . both legs . . . shall constitute total and permanent disability, to be compensated according to the provisions of G.S. 97-29." The Commission's findings support a conclusion that plaintiff suffered total loss of use of both of his legs due to arachnoiditis. Therefore, under N.C.G.S. 97-31(17) plaintiff would be entitled to receive benefits under N.C.G.S. 97-29.

Affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

At the outset I point out that I find no fault in providing total permanent disability for the injuries and loss of ability to earn wages suffered by this claimant. A worker who has suffered injuries which render him unable to work and earn *any* wages

*should* be so compensated. Unfortunately our legislature has thus far enacted no legislation which would permit it.

The majority of this Court has today rewritten a significant feature of our Workers' Compensation Act through the process of "judicial legislation." The rules governing compensation under the Act have their origin in a legislative act—they are not "judge-made" and are therefore not subject to change at the whim of the appellate courts.

N.C.G.S. § 97-31 provides, in pertinent part:

In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, and *shall be in lieu of all other compensation,* including disfigurement, to wit:

*(23) For the total loss of use of the back, sixty-six and two-thirds per centum (66 and ⅔%) of the average weekly wages during 300 weeks.* The compensation for partial loss of use of the back shall be such proportion of the periods of payment herein provided for a total loss as such partial loss bears to total loss, except that in cases where there is 75 per centum (75%) or more loss of use of the back, in which event the injured employee shall be deemed to have suffered "total industrial disability" and compensated as for total loss of use of the back. (Emphasis added.)

Chairman William Stephenson of the North Carolina Industrial Commission in his dissent from the Full Commission's Opinion and Award of 7 September 1982 explained the history of this provision of this statute:

Prior to July 1, 1955, impairment to the back was a "general nature" impairment, and the money an injured employee received for the same was tied to his ability to work and earn wages. Almost every back disability case was litigated. In 1955, the Industrial Commission saw the need to designate the back as a specific member of the body and sponsored Chapter 1026 of the Session Laws of 1955. Since then, the amount of money one receives for a disability to the back is in no way related to his capacity to earn.

The issues in this case are not novel. N.C.G.S. § 97-31(23) and its meaning have been discussed by the Court in its decisions in *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978) and *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978).

In *Little*, medical testimony indicated that plaintiff sustained an injury to her spinal cord, which was not repaired by subsequent surgery, and which resulted in incomplete use of the extremities, weakness of grip, generalized weakness in both arms and both legs, loss of mobility, numbness to pinprick throughout the body, and difficulty with tactile recognition of objects placed in the hands. One physician rated the plaintiff at 50% physical disability of "total life function" and another physician rated the plaintiff at 40% disability to the neurological system. The Industrial Commission found that plaintiff suffered an average permanent partial disability of 45% of loss of use of her back and compensation was awarded for 135 weeks pursuant to N.C.G.S. § 97-31(23). On appeal, this Court reversed and stated that the award must take into account all other compensable injuries resulting from the accident. The plaintiff would not be limited to an award for permanent disability to the back when uncontradicted evidence indicated other impairments which were compensable *under other sections of the Workers' Compensation Act.*

In *Perry* medical testimony indicated that the plaintiff suffered a 50% permanent partial disability or loss of use of the back and compensation was awarded for 150 weeks pursuant to N.C.G.S. § 97-31(23). The plaintiff testified that he was suffering pain in his back and legs and that he was totally disabled as a result of his pain. Plaintiff contended that therefore he was entitled to compensation for permanent and total disability under N.C.G.S. § 97-29 based upon the evidence. Justice Huskins, writing for the Court, stated:

> The language of G.S. § 97-31 . . . compels the conclusion that if by reason of a compensable injury an employee is unable to work and earn *any* wages he is totally disabled, G.S. § 97-2(9), and entitled to compensation for permanent total disability under G.S. § 97-29 *unless all his injuries are included in the schedule set out in G.S. § 97-31.* In that event the injured employee is entitled to compensation exclusively under G.S. § 97-31 regardless of his ability or inability to earn wages in

the same or any other employment; and such compensation is "in lieu of all other compensation, including disfigurement." (Emphasis in original.)

296 N.C. at 93-94, 249 S.E. 2d at 401.

In *Perry*, the Court remanded the case to the Industrial Commission for Findings of Fact as to the amount of permanent disability or loss of use to plaintiff's legs caused by this injury. The Court instructed, "If plaintiff has suffered no loss of use of a leg by reason of his injury, the case is closed. *If, in addition to his back injury, he has suffered some loss of use of either or both legs, the Commission shall make Findings of Fact as to the amount and, within statutory limits, issue an Award pursuant to G.S. § 97-31(15).*" (Emphasis added.) The court did not indicate that the Commission could consider an award pursuant to N.C.G.S. § 97-29, as contended by the plaintiff, even if there was evidence of permanent disability or loss of use to plaintiff's legs as a result of his compensable injury.

In the instant case, the evidence is clear and unequivocal. The Court of Appeals acknowledged in its opinion that "Dr. Coffee stated that his disability rating for Plaintiff's leg would be zero, since he found no 'actual functional incapacity'" and "Similarly, Dr. Price reported that 'there is no disability to the leg. He has leg pain but the problem is not in the leg itself but originates in the back.'" All of the evidence in this case is that plaintiff sustained an injury to the back and any disability which he retains is a result of this back injury. Chairman Stephenson in his dissenting opinion said "Where is this arachnoiditis? It is in the back." To argue that inflammation or scarring of the nerves in the spinal canal is not part of the back would be the same as arguing that nerves in the arm or the leg are not part of that particular member.

The Court of Appeals in its opinion states, "In medical terms no functional disability was apparent; however, this by no means excluded the possibility that plaintiff suffered sufficient pain in his legs to be legally disabled within the meaning of the Act." Relying on the *Perry* decision, the Court of Appeals found that the Commission was correct in considering the "referred pain" in the plaintiff's legs, in looking beyond Section 97-31(23) and in not limiting plaintiff's award to that section.

In my opinion, the Court of Appeals and the Full Industrial Commission have taken it upon themselves to make a medical determination, in direct contradiction to the medical evidence adduced at the hearing, that the plaintiff suffered sufficient pain in his legs to be legally disabled within the meaning of the Workers' Compensation Act. This is a determination which is beyond the expertise of either the Industrial Commission or the courts. In the absence of expert medical testimony on the subject, neither the commission nor the courts can make a finding as to permanent disability to a specific part of the body.

> Where . . . the injury is *subjective* and of such a nature that laymen cannot, with reasonable certainty, know whether there will be future pain and suffering, it is necessary . . . that there "be offered evidence by expert witnesses, learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering as a result of the injury proven." (Citations omitted.)

*Gillikin v. Burbage,* 263 N.C. 317, 326, 139 S.E. 2d 753, 760-61 (1965).

> Where, however, the subject matter — for example, a ruptured disc — is "so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition." Where "a layman can have no well-founded knowledge and can do no more than indulge in mere speculation . . . there is no proper foundation for a finding by the trier without expert medical testimony." The physical processes which produced a ruptured disc belong to the mysteries of medicine. . . . (Citations omitted.)

*Id.* at 325, 139 S.E. 2d at 760.

If the Court of Appeals had found that the evidence was not sufficient concerning disability, if any, in the plaintiff's legs, the cause should have been remanded to the commission for further

findings on that issue in accordance with *Perry*. There was no evidence and no basis upon which the commission or the Court could find permanent total disability under Section 97-29 on the facts in this case.

The evidence in this case indicates that plaintiff sustained an injury to his back and any disability which plaintiff retains is as a result of the back injury. The majority of the Full Commission and the Court of Appeals have significantly bent the law to provide payment under Section 97-29 for permanent total disability. There is no evidence that the plaintiff has sustained an injury to any portion of his person other than his back. The evidence is unequivocal that all of the plaintiff's problems originate in his back and that he is entitled to compensation solely under Section 97-31(23) for loss of use of the back.

The rule in *Little* and *Perry* is clear and sound. If the plaintiff's injury is included in the schedule set out in N.C.G.S. § 97-31, plaintiff is entitled to compensation exclusively under the terms of that section. As the Court has said numerous times, this is true from the language of the statute itself. For the very reasons set out by Chairman Stephenson in his dissenting opinion quoted above, the General Assembly has made a policy decision that the amount of money an employee can receive for a permanent disability to the back, as well as any other injury to a scheduled member of the body, is not related to his capacity to earn wages in the same or any other employment. Neither the Industrial Commission nor the courts have authority to alter or bend this legislative directive in individual cases, no matter how compelling the claim may be. The legislature has acted for legitimate reasons and the commission and the courts are bound to carry out the law as it is written.

I would applaud legislative action amending our Workers' Compensation Act to provide this claimant the award mistakenly allowed him by the Full Commission, the Court of Appeals and the majority in the opinion in this case. In the absence of such an amendment, I would vote to uphold the Act as it is written. I would reverse the Court of Appeals and remand for an appropriate award under N.C.G.S. § 97-31(23).