***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford, and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford, with minor modifications.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction of this matter.
2. The date of injury which is the subject of this claim is March 18, 1996.
3. On March 18, 1996, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On March 18, 1996, an employee-employer relationship existed between the Employee-Plaintiff and the Employer-Defendant.
5. On March 18, 1996, the Employer-Defendant employed three (3) or more employees.
6. The carrier of workers' compensation insurance in North Carolina for the Employer-Defendant is the North Carolina Insurance Guaranty Association.
7. The Employee-Plaintiff's weekly compensation rate is $356.56.
8. The parties participated in a mediated settlement conference on November 23, 2009. Defendants have paid the entire mediation fee in the amount of $568.75. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, Defendants are seeking a credit in the amount of $284.38 for payment of Plaintiff's share of the mediation costs. Defendants seek to withhold funds from any award for this purpose, which is opposed by Plaintiff.
 ***********
As set forth in the Pre-Trial Agreement and this Opinion and Award, the Full Commission addresses the following: *Page 3 
 ISSUES
1. Has Plaintiff reached maximum medical improvement from all his injuries?
2. Should Plaintiff be declared permanently and totally disabled?
3. Is there any basis for an award of attorney's fees against Defendants pursuant to N.C. Gen. Stat. § 97-88.1, as Plaintiff alleges?
4. Are Plaintiff's gastro-intestinal issues related to his compensable injuries?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 54 years of age as of the date of the hearing before the Deputy Commissioner. He has a ninth grade education, and has never earned his GED. Plaintiff was employed by Jack Grey Transportation as a truck driver. Prior to his March 18, 1996 injury by accident, Plaintiff had worked as a truck driver for approximately twenty-five years.
2. On March 18, 1996, Plaintiff sustained a compensable injury by accident to his lower back while trying to pull a tarp over the load on his truck. Plaintiff's claim was accepted as compensable and aForm 21 Agreement for Compensation for Disability was approved by the Industrial Commission in 1998.
3. Plaintiff returned to work for a short time following his injury by accident. Due to ongoing pain in his back, Plaintiff was removed from work and temporary total disability benefits were resumed. Plaintiff currently receives $356.56 per week in indemnity compensation.
4. In May of 1996, Plaintiff underwent a discectomy at L5/S1 on the left. On July 17, 1998, *Page 4 
Dr. Charles Branch of Wake Forest University Baptist Hospital performed a posterior lumbar interbody fusion with insertion of a ray cage at L5/S1. In March of 1999, Dr. Branch released Plaintiff to return to work with restrictions in accordance with the recommendations set forth in a functional capacity evaluation.
5. On November 10, 1999, Plaintiff began treating with Dr. T. Kern Carlton at The Rehab Center for chronic pain management. Dr. Carlton recommended that Plaintiff obtain the assistance of a vocational rehabilitation professional to help with job placement and advised Plaintiff to follow the restrictions of his functional capacity evaluation.
6. In 1998, Plaintiff began receiving treatment with Dr. Paul Coughlin of Piedmont Urological Associates for erectile dysfunction. Dr. Coughlin opined that Plaintiff's erectile dysfunction occurred as a result of his back injury at work. Plaintiff ultimately underwent a procedure to implant an inflatable penile prosthesis with Dr. Coughlin in 2002, with successful results.
7. Mr. Bernard Moore, a certified rehabilitation counselor, worked with Plaintiff for about three and one-half years from May 2003 until December 2006. Mr. Moore opined that Plaintiff was unable to return to work as a result of his physical and neuropsychological conditions.
8. On February 22, 2005, Plaintiff presented to Dr. Marlene Brogan at North Carolina Neuropsychiatry for evaluation of his major depression with anxiety. On that day, Plaintiff reported a drop in concentration, poor mood, poor energy, and fragmented sleep. Plaintiff complained of anxiety associated with participating in vocational rehabilitation because he "knows he cannot return to the workplace." Plaintiff continued treating with Dr. Brogan until May 16, 2005, at which time Dr. Brogan determined that Plaintiff had reached maximum *Page 5 
medical improvement.
9. In June 2005, Plaintiff began receiving medical treatment for left foot pain. On June 20, 2008, Dr. Robert Anderson with OrthoCarolina released Plaintiff at maximum medical improvement and assigned a sixty percent permanent impairment rating to his left foot.
10. On June 16, 2005, Plaintiff saw Dr. Edward Hanley of CMC Orthopaedics for evaluation of his ongoing back pain. Dr. Hanley determined that Plaintiff had evidence of disc degeneration with spinal stenosis at L4-5, the level above Plaintiff's previous L5-S1 fusion. Dr. Hanley recommended an extension of Plaintiff's fusion to the L4-5 level.
11. On November 15, 2006, Deputy Commissioner Chrystal Redding Stanback issued an Opinion and Award granting Plaintiff's motion for additional medical compensation. Deputy Commissioner Stanback ordered Defendants to authorize the two-level fusion surgery recommended by Dr. Hanley. In her Opinion and Award, Deputy Commissioner Stanback made no award of ongoing disability benefits as Plaintiff was already receiving benefits pursuant to an approved Form 21 at the time.
12. On February 5, 2007, Dr. Hanley performed a decompression laminectomy and instrumented fusion from L4 to S1. Dr. Hanley saw Plaintiff in follow-up. On April 16, 2008, after the fusion was solid, Dr. Hanley performed surgery to remove a pedicle screw at the L4 level, in an attempt to provide Plaintiff some pain relief.
13. On June 29, 2007, Plaintiff began treating with Dr. John Barkenbus at North Carolina Neuropsychiatry. Dr. Barkenbus diagnosed Plaintiff with depression and dyspepsia.
14. As of Plaintiff's visit on September 11, 2008, Dr. Hanley determined that Plaintiff was at maximum medical improvement for his back and rated Plaintiff with a thirty percent permanent impairment to his back. Dr. Hanley's opinion, as of the date of his deposition, was *Page 6 
that Plaintiff remains unable to work and will be unable to work at any time in the foreseeable future.
15. Plaintiff continued to treat with Dr. Coughlin for observation and maintenance of his penile implant. On March 11, 2009, Plaintiff complained to Dr. Coughlin of increasing right groin pain. On examination, Dr. Coughlin noted right groin tenderness compatible with ileoinguinal nerve entrapment and nerve root irritation. Dr. Coughlin also noted Plaintiff had a history of a right inguinal hernia repair approximately ten years prior which was unrelated to his back condition and surgeries.
16. On May 18, 2009, Dr. Coughlin performed a right inguinal exploration procedure, during which Dr. Coughlin found that the nerve and cord were tightly entrapped by extensive scar tissue. Dr. Coughlin released and excised scar tissue to free the nerve entrapment and provide pain relief.
17. On September 28, 2009, Plaintiff returned to Dr. Barkenbus for ongoing treatment of his depression and anxiety. Dr. Barkenbus again noted no change in Plaintiff's depression. Plaintiff reported to Dr. Barkenbus that he felt there was no way he could ever return to work.
18. On November 30, 2009, Plaintiff returned to Dr. Barkenbus for further treatment of his depression. Dr. Barkenbus performed psychological testing. Dr. Barkenbus interpreted the results to show that Plaintiff's depression and anxiety symptoms were disabling and caused a marked interference with concentration and pace, social functioning, and interpersonal stress tolerance. Dr. Barkenbus also noted that Plaintiff's symptoms had persisted despite five years of psychotropic medication trials and intermittent counseling.
19. Per the testimony of Dr. Barkenbus, Plaintiff continues to suffer from chronic back and leg pain, chronic depression and chronic anxiety. He will need ongoing treatment and *Page 7 
monitoring of his medications taken for his psychological condition. Due to his psychological condition, Plaintiff would have difficulty with any vocational retraining, and in Dr. Barkenbus' opinion, Plaintiff remains unable to work, a condition that is unlikely to change.
20. Dr. Barkenbus testified, and the Full Commission finds, that the medications Plaintiff is taking for his injuries can cause acid reflux and digestive problems. In March 2008, Dr. Barkenbus recommended, and the Full Commission finds, that Defendants should provide a gastrointestinal evaluation for Plaintiff.
21. Per Dr. Coughlin's testimony, Plaintiff is at maximum medical improvement for his erectile dysfunction, although he will continue to need monitoring. Dr. Coughlin opined that, although the penile implant was successful, the emotional impact of this physical injury can be emotionally devastating, particularly to a man Plaintiff's age.
22. On December 31, 2009, Plaintiff returned to Dr. Coughlin and reported improvement in his right groin pain. At the time of his deposition, Dr. Coughlin testified that Plaintiff had not reached maximum medical improvement for his groin injury. Plaintiff will need ongoing treatment, possibly conservative therapy with heat, anti-inflammatory medication, and physical therapy, for his groin pain.
23. Dr. Carlton opined that Plaintiff has reached maximum medical improvement for his chronic pain condition. Additionally, Dr. Carlton agrees that Plaintiff cannot return to gainful employment.
24. In the almost fifteen years since his March 18, 1996 back injury, Plaintiff has returned to work for approximately two months shortly after his accident. Plaintiff continues to have back pain extending into his legs every day. Plaintiff also experiences daily groin pain. When Plaintiff appeared for his evidentiary hearing, it was apparent he was suffering from pain *Page 8 
as he noticeably limped to the witness stand.
25. Plaintiff underwent vocational rehabilitation for over three years and was unsuccessful in finding employment. Mr. Moore, Plaintiff's vocational counselor for that period, is of the opinion that, based upon Plaintiff's physical condition, and particularly Plaintiff's two-level fusion surgery, as well as his severe depression and anxiety, Plaintiff is not able to return to work.
26. Based upon all of the competent, credible evidence of record, the Full Commission finds that Plaintiff has reached maximum medical improvement for all of his compensable injuries, with the exception of his groin injury. However, Plaintiff's groin injury is not a determinative factor in his incapacity to work. As established by the testimony of the physicians and the vocational specialist, due to his back injury and ongoing pain and the psychological impact of the same, and considering his age, education and work experience, Plaintiff has sustained a permanent and complete loss of wage earning capacity such that he will not be able to earn the same wages he earned prior to his injury by accident.
27. Plaintiff filed a Motion for Medical Expense Reimbursement with the Executive Secretary's office on or about June 2, 2008. Plaintiff's Motion requested an Order compelling Defendants to reimburse Plaintiff for travel to and from pharmacies in February, March and April 2008, and to reimburse Plaintiff for the cost of the hotel room Plaintiff's wife stayed in while Plaintiff was undergoing surgery in Charlotte in April 2008. Plaintiff's Motion and the attachments thereto, including the affidavits of Plaintiff and his wife, are considered part of the evidence of record in this case.
28. Defendants filed a Response to Plaintiff's Motion for Medical Reimbursement on June 10, 2008 citing the Rules Governing the Application of Fee Schedule which provide that *Page 9 
"no allowance will be made for trips to drug stores for drugs or medical supplies unless medically necessary." The Rule further provides that reimbursement for hotel expenses is otherwise $45.00 per day, as noted on the Form 25T.
29. Plaintiff's affidavit details the difficulties he experienced securing his medications during the period of time in question. On some occasions, the carrier had not approved the medications, causing Plaintiff to make additional trips to the pharmacy out of medical necessity.
30. In securing her hotel room in Charlotte during the time of Plaintiff's surgery, Plaintiff's wife relied upon a list of hotels provided by the carrier, and booked her room at one of those hotels. It was her understanding that the carrier would therefore pay for the same. Under these circumstances, it is reasonable for Plaintiff to request reimbursement in excess of $45.00 per day.
31. Defendants have not engaged in stubborn, unfounded litigiousness in requesting the Industrial Commission to determine whether Plaintiff is permanently and totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. When the employee is totally incapacitated from earning wages due to his injuries, he is entitled to receive ongoing indemnity compensation. N.C. Gen. Stat § 97-29. A claimant is permanently and totally disabled when he is totally unable to earn wages which he was receiving at the time of the injury in the same or any other employment. Burwell v. Winn-Dixie Raleigh,114 N.C. App. 69, 441 S.E.2d 145, (1994). This is true even if no single injury of claimant's resulted in total and permanent disability, so long as the combined effect of all the *Page 10 
injuries caused permanent and total disability. Fleming v. K-MartCorp., 312 N.C. 538, 324 S.E. 2d 214 (1985).
2. In Effingham v. Kroger Co.,149 N.C. App. 105, 561 S.E.2d 287 (2002), the Court held that maximum medical improvement is the initial point at which either party can seek a determination of permanent loss of wage-earning capacity. Id. In this case, Plaintiff has reached maximum medical improvement of all disabling injuries. Accordingly, Defendants' request was appropriately filed.
3. In the instant case, Plaintiff's injury was accepted pursuant to a Form 21 which was approved by the Commission in 1998. A Form 21 does not constitute an award of the Commission as contemplated under the provisions of N.C. Gen. Stat. § 97-47. Beard v.Blumenthal Jewish Home, 87 N.C. App. 58, 359 S.E.2d 261 (1987). Thus, there is no need to show a change of condition in order for the Commission to award permanent and total disability.
4. Plaintiff is unable to earn the same wages he was receiving at the time of his injury by accident in any employment due to the combination of all his compensable injuries and, as such, is permanently and totally disabled pursuant to N.C. Gen. Stat. § 97-29. Pursuant to that statute, ongoing compensation, including medical compensation and indemnity for wage loss, shall be paid to Plaintiff for his lifetime.
5. Plaintiff is in need of ongoing medical treatment for his injuries, including his ongoing back and leg pain, his erectile dysfunction and groin pain, and his gastric problems, as well as ongoing psychological treatment and management of medications for pain, depression and anxiety. Defendants are responsible for providing all such ongoing reasonably necessary medical treatment for the remainder of Plaintiff's lifetime. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 11 
6. The mileage and hotel expenses which Plaintiff requested reimbursement for were medically necessary, and, therefore, Plaintiff's Motion should be granted. Defendants shall reimburse Plaintiff for mileage to and from the pharmacy for the dates set forth in Plaintiff's Motion for Medical Expense Reimbursement dated June 2, 2008, and for his wife's hotel expenses of $89.00 per night, plus applicable taxes and fees, for two nights in Charlotte in April 2008, when Plaintiff had surgery, as reasonable and necessary medical expenses. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Under the provisions of N.C. Gen. Stat. § 97-88.1, the Commission may, in its discretion, assess the whole cost of the proceedings upon a party who is found to have brought, prosecuted, or defended a hearing without reasonable ground. N.C. Gen. Stat. § 97-88.1. The purpose of this section is to deter stubborn, unfounded litigiousness which is inharmonious with the purpose of the Workers' Compensation Act to provide compensation to an injured employee. Sparks v. Mountain BreezeRestaurant Fish House, Inc.,55 N.C. App. 663, 286 S.E.2d 575 (1982). Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to provide all reasonably necessary medical treatment for Plaintiff's injuries, including psychological, erectile dysfunction, pain management and gastro-intestinal treatment. *Page 12 
2. Plaintiff's request for medical expense reimbursement is granted, and Defendants shall pay the mileage and hotel expenses set forth in that Motion.
3. Defendants shall continue to pay temporary total disability compensation to Plaintiff at the weekly rate of $356.56 for the remainder of his lifetime.
4. Defendants shall continue to pay to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty percent of the ongoing permanent disability compensation due Plaintiff.
5. Plaintiff's request for an attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
6. In the discretion of the Full Commission, Defendants shall pay the entire mediator's fee.
7. Defendants shall pay all costs, including all expert witness fees previously approved.
This the ___ day of April, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
S/___________________ STACI T. MEYER COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1