LUTHER GILES v. TRI-STATE ERECTORS AND LIBERTY MUTUAL INSURANCE COMPANY

No. 95

(Filed 6 May 1975)

1. **Master and Servant § 69— workmen's compensation — award for all injuries**

    Where a workmen's compensation claim is properly pending before the Industrial Commission, the injured employee is entitled to an award which encompasses all injuries received in an accident.

2. **Master and Servant § 69— workmen's compensation — single claim for all injuries**

    An injured employee is required to file but a single claim for workmen's compensation, and the amount of the compensation payable

is predicated on the extent of the disability resulting from the accident.

**3. Master and Servant §§ 72, 93— workmen's compensation — foot injury within original claim**

Plaintiff's claim for compensation for any permanent partial loss of use of his right foot was embraced within his original claim for compensation and was pending when the Full Commission entered an award covering disfigurement and permanent partial disability to the right arm but failing to make any finding of fact or award with respect to plaintiff's right foot, although evidence of the amount of permanent partial disability of the foot had been presented to the hearing officer; therefore, the Court of Appeals erred in holding that the question of permanent partial disability of the right foot was not properly before the Commission.

ON *certiorari* to the Court of Appeals to review its decision reported in 23 N.C. App. 148, 208 S.E. 2d 408 (1974), affirming an award of the Industrial Commission.

Facts revealed by the record are narrated in the numbered paragraphs which follow.

1. Plaintiff was injured under compensable circumstances on 23 April 1970 when a bar joist dropped on his head. Liability under the Workmen's Compensation Act was admitted and plaintiff was paid compensation benefits during the period of temporary total disability and was paid compensation for a ten percent permanent partial disability of his right arm.

2. Plaintiff claimed additional compensation for the permanent partial disability of his right arm, for permanent partial disability of his right foot and for disfigurement. A hearing was conducted on 11 July 1972 before Deputy Commissioner Barbee to determine these matters. At that hearing plaintiff testified concerning all aspects of his injury. With respect to his right foot he said: "I have some difficulty with one foot. My right one. I do not want to have that foot operated on at this time if I can keep from it. The same tingling sensation is still there after they run a needle in it but it didn't help it." Counsel representing plaintiff at that time stated: "Your Honor, in the reports which have been filed there's some mention about this foot. I just wanted to make a record of the fact that he still does have this old foot. I don't know which way it's going to go."

Dr. Urbaniak's medical report dated 18 December 1970 was then stipulated into evidence, and it contained the following with respect to plaintiff's right foot:

"His main complaint today is paresthesias of the plantar aspect of his right foot. He states this has been present since he returned to consciousness following his accident. He apparently made no note of this previously, but examination today does reveal evidence of posterior tibial nerve compression behind the right malleolus. On percussing the nerve, he has sensation shooting out the bottom of his foot of 'pins and needles' type of feeling. On compression of the vascular system just above the malleolus, he has some reproduction of the sensations. He has normal sensation on the plantar aspect of the foot, however. With a tourniquet placed around the calf and inflated to 110 mm produced no symptoms at 2 minutes, but when it was released, he had paresthesias on the plantar aspect of his foot. He has good dorsalis and posterior tibial pulses. There is a very slight amount of swelling in the posterior tibial compartment on the right.

I believe this man has symptoms of a tarsal tunnel syndrome or compression of the posterior tibial nerve secondary to scar in all probability a result of the blow to this region during his accident.

Nerve conduction times are done on the right and left lower posterior tibial nerves across the ankle joint and the right is 5.8 milliseconds latency and the left 6.0 milliseconds latency and these are normal conduction latencies.

I have injected this area with Xylocaine and Cortisone and told him to return to me in about a month and if his symptoms persist, we may consider another block or eventually posterior tibial nerve decompression in this region."

It will be noted that Dr. Urbaniak placed no disability rating on plaintiff's right foot at this time.

In a letter to defendant's compensation carrier dated 18 March 1971, Dr. Urbaniak stated:

"RE: Luther Giles
Duke No. H9 2 791
C-512-16227

Dear Mr. Parker:

I will try to answer your questions about Mr. Giles' foot. If the surgery is necessary on Mr. Giles' foot, and I hope

that it is not, he should have no permanent partial disability following surgery. This would amount to decompressing the nerve which is causing his symptoms. However, it is hoped that this will subside following my last injection and quite often subsides without any treatment.

If surgery is necessary, he would have to spend about five days in the hospital and would lose no more than 2 weeks of work and possibly only about 10 days.

In other words, this requires a skin incision about the ankle, freeing up the nerve and application of a dressing about the ankle for about a week. The sutures could be removed in about 10 days."

3. Following the hearing on 11 July 1972, Deputy Commissioner Barbee found that plaintiff had sustained a twenty-five percent permanent partial disability of the right arm and awarded compensation for the additional fifteen percent, fixed the compensation for disfigurement, and made provision for counsel fees. Since Dr. Urbaniak had not rated the right foot, no compensation was awarded with respect to it. Both sides appealed to the Full Commission.

4. On 15 February 1973 the Full Commission struck the award for fifteen percent additional permanent partial disability to the right arm, increased the disfigurement award and reduced counsel fees which had been allowed by Deputy Barbee. The Full Commission then ordered that plaintiff be examined by Dr. Urbaniak "for the purpose of determining what amount of additional permanent partial disability, if any, this physician finds the plaintiff now has with reference to his right upper extremity."

5. Dr. Urbaniak conducted the examination as ordered on 25 May 1973. Then on 28 August 1973 Dr. Urbaniak testified before Commissioner Stephenson that in October 1970, when he rated plaintiff, he did not give him any permanent partial disability of the right foot but said he would give plaintiff a ten percent permanent partial disability of the right foot following his examination on 25 May 1973. The doctor called attention to the fact that a good portion of his note of 18 December 1970 involved "evaluation of this foot problem." Alluding to his examination of plaintiff on 25 May 1973, Dr. Urbaniak said:

"The disability to his foot, in fact, is disabling insofar as ability to use the foot. This is a problem. We have a name

for this. I mentioned here the tarsal tunnel syndrome. It is where the bone—the nerve goes through the bone there, the tunnel. Nerve goes through a tunnel in the bone, so to speak. This particular tarsal tunnel syndrome was originally described at Duke nearly 20 years ago, and it is disabling. It is like having a hot foot all the time. He has that condition. That is a nerve that goes through the tunnel of the bone. It is a bone on one side and kind of ligaments on the other side and they may squeeze the nerve, so to speak. . . . I don't think that any type of treatment will benefit him."

Dr. Urbaniak then gave plaintiff a twenty-five percent permanent partial disability rating on his right arm and a ten percent permanent partial disability rating on his right foot "based on the continued paresthesias and sensitivity over the posterior tibial nerve."

All evidence taken before Commissioner Stephenson was transcribed and referred to the Full Commission.

6. On 24 October 1973 the Full Commission entered its final order reinstating the award for fifteen percent additional permanent partial disability of plaintiff's right arm, approved an additional counsel fee, but made no finding and issued no award with respect to plaintiff's right foot.

7. Plaintiff's motion, filed 2 November 1973, to reconsider the matter with respect to his right foot was denied and he appealed to the Court of Appeals, claiming compensation for a ten percent permanent partial disability of that member. The Court of Appeals affirmed the award of the Industrial Commission, and we allowed certiorari to review that decision.

*John J. Schramm, Jr., Attorney for plaintiff appellant.*

*No counsel contra.*

HUSKINS, Justice.

This case turns on whether the Industrial Commission erred in failing to make findings of fact relative to permanent partial disability of plaintiff's right foot, if any, sustained by reason of his accident on 23 April 1970.

It is quite apparent from the record that plaintiff's right foot was still in the healing stage and not ready to be rated when Dr. Urbaniak's medical report dated 18 December 1970 was

composed. Hence that report contained no rating on the right foot. Even so, when the report was offered and received in evidence at the hearing before Deputy Barbee on 11 July 1972, plaintiff's counsel said: "I just wanted to make a record of the fact that he still does have this old foot. I don't know which way it's going to go." Thus all parties and the Industrial Commission were on notice that plaintiff had a foot involvement arising out of the accident that might, or might not, result in permanent partial disability, or loss of use of that foot.

More than ten months later when Dr. Urbaniak examined plaintiff on 25 May 1973 by order of the Full Commission, it was found that plaintiff's right foot had changed for the worse resulting in a ten percent permanent partial loss of use of it. The doctor rated the loss accordingly and stated that further treatment would be of no benefit. Thus the healing period had ended. That evidence, along with the doctor's evidence concerning plaintiff's twenty-five percent permanent partial disability of the right arm, was referred by Commissioner Stephenson to the Full Commission "for such disposition as it deems appropriate."

For some obscure reason, the Full Commission declined to make *any* finding of fact with respect to plaintiff's right foot and plaintiff appealed. The Court of Appeals upheld the Commission's action in this regard for that (1) plaintiff stipulated at the 11 July 1972 hearing that the issue before the Commission was "disfigurement and the amount of permanent partial disability to the arm," (2) plaintiff never brought up the alleged injury to his right foot until 2 November 1973 when he took exception to the failure of the Full Commission to award him compensation for ten percent loss of use of his foot, and (3) plaintiff stated in his notice of appeal to the Full Commission from Deputy Barbee's award that "all other grounds for appeal were waived and abandoned." The Court of Appeals concluded its decision by saying: "It was a too late attempt to do what should have been done some two years or more prior thereto."

It suffices to say that the record does not support grounds (1) and (2) and the third ground is not relevant to plaintiff's foot injury since the foot had not been rated on 11 July 1972 when Deputy Barbee heard evidence, found facts, and issued an award from which plaintiff appealed to the Full Commission. The question of plaintiff's right foot was not involved in that appeal. Rather, the appeal concerned plaintiff's dissatisfac-

tion with the amount awarded for disfigurement and defendant's dissatisfaction with the amount awarded for permanent partial disability to plaintiff's right arm.

[1, 2]   Where a claim is properly pending before the Industrial Commission, as here, the injured employee is entitled to an award which encompasses all injuries received in the accident. The employee is required to file but a single claim, and the amount of compensation payable is predicated on the extent of the disability resulting from the accident. *Smith v. Red Cross,* 245 N.C. 116, 95 S.E. 2d 559 (1956). G.S. 97-31(14) fixes the amount of compensation payable for the loss of a foot and specifies that such amount is payable in addition to compensation paid for disability during the healing period and in lieu of all other compensation, including disfigurement. Thus the award of the Industrial Commission should, within statutory limits, compensate him for all disability suffered. *Watkins v. Motor Lines,* 279 N.C. 132, 181 S.E. 2d 588 (1971); *Rice v. Panel Co.,* 199 N.C. 154, 154 S.E. 69 (1930).

[3]   It necessarily follows that plaintiff's claim for compensation for any permanent partial loss of use of his right foot was embraced by his original claim and was pending on 24 October 1973 when the Full Commission entered an award covering disfigurement and permanent partial disability to the right arm but failed to make any finding of fact or award with respect to plaintiff's right foot. No statute of limitations runs against a litigant while his case is pending in court. *Hanks v. Utilities Co.,* 210 N.C. 312, 186 S.E. 252 (1936); *Watkins v. Motor Lines,* *supra.* "Until all of an injured employee's compensable injuries and disabilities have been considered and adjudicated by the Commission, the proceeding pends for the purpose of evaluation, absent laches or some statutory time limitation." *Hall v. Chevrolet Inc.,* 263 N.C. 569, 139 S.E. 2d 857 (1965). Here, no laches are shown and no statutory bar exists. Plaintiff's alleged disability to his right foot seems to have been "lost in the shuffle."

For the reasons stated the decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Industrial Commission. That agency will consider the evidence in the record with respect to plaintiff's right foot, and any additional evidence either party may desire to offer

on the subject, make findings of fact thereon as to the amount of permanent partial disability, or loss of use, if any, of plaintiff's right foot and issue an award accordingly.

Reversed and remanded.